IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KEVIN FERRELL and
MELISSA FERRELL,
his wife,

     Plaintiffs,

v.                           Civil Action No. 5:05CV115
                                     (STAMP)
LARAY TYRONE BROOKS and
ARCH INSURANCE COMPANY,
a foreign corporation,

     Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR
LEAVE TO FILE A LATE RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I.  Procedural History

The plaintiffs, Kevin Ferrell and Melissa Ferrell, filed a complaint in the Circuit Court of Brooke County, West Virginia against the defendants, Laray Tyrone Brooks ("Brooks") and Arch Insurance Company ("Arch"). In their complaint, the plaintiffs allege that the defendant Brooks negligently operated his motor vehicle he was driving, which resulted in injuries to the plaintiff, Kevin Ferrell, a volunteer fireman for the Mud River Valley Fire Department. The plaintiffs also contend that defendant Brooks, through his insurance carriers, paid the policy limits on both of the motor vehicle liability insurance policies, which

insured him for his alleged negligence in causing the above-stated accident.[1]    The plaintiffs further allege that Arch, the underinsured motorist insurer of the Mud River Valley Fire Department, has consented and waived any claim for subrogation against Brooks relative to the settlement and that Arch has wrongfully denied the plaintiffs' underinsured motorists coverage and auto medical payments coverage benefits.  Arch has denied that such coverage applies to the plaintiffs under the terms of the policy.

The plaintiffs' complaint alleges breach of contract and common-law bad faith claims; it also asserts that Arch violated the West Virginia Unfair Claims Settlement Practices Act, W. Va. Code § 33-11-4(9), and its implementing regulations, 114 C.S.R. § 14, issued by the West Virginia Insurance Department.  This case was removed to this Court, and upon a joint motion by the parties, this Court entered an order bifurcating the plaintiffs' claims against Arch and staying proceedings, including discovery, except on the issue of insurance coverage.

Subsequently, Arch filed a motion for summary judgment on the issue of insurance coverage.  The plaintiffs filed a motion for

---

[1]The parties assert that the plaintiffs settled with the insurers for defendant Brooks.  However, this Court has not received a request for dismissal of Brooks or any dismissal order filed in the Circuit Court of Brooke County, West Virginia. Accordingly, based upon these circumstances, this Court dismisses defendant Laray Tyrone Brooks, since plaintiffs have not sought to further advance any claims against Brooks.

leave to file a late response.  The plaintiffs also filed the response for which they sought leave to file, and the defendant Arch filed a reply.  For good cause shown, this Court finds that the plaintiffs' motion for leave to file a late response to defendant's motion for summary judgment should be granted.

The plaintiffs also filed a motion for summary judgment on the same coverage issue.  The defendant Arch responded, and the plaintiffs replied.

The parties' motions are now fully briefed and ripe for review.  After reviewing the parties' memoranda and the applicable law, this Court finds that Arch's motion for summary judgment must be granted and the plaintiffs' motion for summary judgment must be denied.

## II.  Facts

On or about January 6, 2004, Kevin Ferrell, a volunteer fireman for the Mud River Valley Fire Department ("MRVFD"), was traveling north in his personal vehicle on U.S. Highway 119, in Charleston, West Virginia, when he noticed an accident involving two other vehicles.  Pursuant to his duties as a volunteer fireman under W. Va. Code § 29-3A-1, Kevin Ferrell stopped his vehicle to render aid to the individuals involved in the accident.  After putting on his fire department gear and activating the flashing emergency lights on his vehicle, Kevin Ferrell began directing traffic at the scene of the accident.  While directing traffic,

Kevin Ferrell was struck by a motor vehicle being operated by defendant Brooks, an underinsured motorist. The plaintiffs claim that Brooks was negligent in that he failed to maintain control of his vehicle and collided with Kevin Ferrell. The plaintiffs contend that as a result of Brooks' negligence, Kevin Ferrell suffered certain injuries which have required him to undergo medical treatment and to incur medical expenses. Further, Kevin Ferrell asserts that he suffered permanent injuries as well as mental and emotional trauma. Plaintiff Melissa Ferrell claims that she suffered loss of consortium of her husband, Kevin Ferrell.

Pursuant to an automobile liability insurance policy on the vehicle that defendant Brooks was driving when he collided with Kevin Ferrell, and a separate policy insuring defendant Brooks, the plaintiffs received a $120,000.00 settlement from the liability insurance carriers. According to the plaintiffs, Arch provided its consent and waiver of subrogation regarding plaintiffs' settlement with the liability insurance carriers.[2] The plaintiffs contend that the limits of the liability policy available to Brooks did not fully compensate them for Kevin Ferrell's injuries and damages arising out of the January 6, 2004 accident. Consequently, Kevin Ferrell filed an underinsured motorists coverage benefits claim with Arch pursuant to the policy that Arch had issued to the MRVFD for the period from July 1, 2003 to July 1, 2004.

---

[2]The defendant Arch does not dispute this assertion.

Arch ultimately rejected Kevin Ferrell's claim. According to Arch, Kevin Ferrell was not eligible for benefits under the underinsured motorists coverage or the auto medical payments coverage of its policy with the MRVFD because Kevin Ferrell did not qualify as an "insured" under the terms of the policy. Arch reached this conclusion because, it claims, Kevin Ferrell was not "occupying or using a covered auto" at the time of the accident.

In their cross-motions for summary judgment, the parties ask this Court to determine, as a matter of law, whether the terms of the policy provide either underinsured motorists coverage or auto medical payments coverage for Kevin Ferrell on the facts of this case.

## III. <u>Applicable Law</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir.

1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has

had sufficient opportunity for discovery.  See Oksanen v. Page
Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502
U.S. 1074 (1992).  In reviewing the supported underlying facts, all
inferences must be viewed in the light most favorable to the party
opposing the motion.  See Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  Discussion

In its motion for summary judgment, the defendant argues that
the insurance policy sold by Arch to the MRVFD is unambiguous and
that the policy clearly does not provide underinsured motorists
coverage or auto medical payments coverage to Kevin Ferrell because
he was not an "insured" under the terms of the policy.  The
defendant contends that Kevin Ferrell was neither "occupying" nor
using his vehicle at the time of the incident giving rise to this
action and that his vehicle is not a covered "auto" under the terms
of the insurance policy.

The plaintiffs' motion for summary judgment asserts that the
relevant policy provisions are vague and ambiguous, and that
therefore, the policy must be construed against the drafting party
-- in this case, Arch.  They further contend, both in their
response to the defendant's motion for summary judgment and in
their own motion for summary judgment, that under West Virginia
case law, Kevin Ferrell was using his vehicle at the time of the
accident and that he therefore qualifies as an "insured."  Finally,

the plaintiffs claim that Arch's agent created a reasonable expectation of coverage for volunteer firemen using their own vehicles to provide emergency services to the public.

A. <u>Ambiguity of the Policy's Provisions on Underinsured Motorists Coverage and Auto Medical Payments Coverage</u>

This Court finds that the provisions on underinsured motorists coverage and auto medical payments coverage of the insurance policy sold to the Mud River Volunteer Fire Department by Arch Insurance Company, effective from July 1, 2003 to July 1, 2004, are clear and unambiguous. To be sure, they are complex and require careful reading, but they are not ambiguous.

To be eligible for underinsured motorists payments or auto medical payments, Kevin Ferrell must qualify as an "insured" under the terms of the policy. The Mud River Volunteer Fire Department is the "Named Insured," but certain additional persons are also "insured" under the terms of the policy.

1. <u>The Structure of the Basic Policy</u>

The policy in effect between July 1, 2003 and July 1, 2004 consists of fifty-one "Forms and Endorsements." Six are relevant to this action: (1) the "Business Auto Declarations," Form/Endorsement No. CA DS 03 10 01; (2) the "Business Auto Coverage Form," Form/Endorsement No. CA 00 01 10 01; (3) the "Who Is An Insured [under the] Business Auto Coverage Form," Form/Endorsement No. AU 4001 04 02; (4) the "West Virginia Auto

Medical Payments Coverage," Form/Endorsement No. CA 99 68 08 98;
(5) the "West Virginia Uninsured and Underinsured Motorists
Coverage," Form/Endorsement No. CA 21 22 04 01; and (6) the "Item
Three Schedule of Covered Autos You Own Extension of Declaration,"
Form/Endorsement No. CA 190 (1-87).

To determine whether a person is an "insured" under the terms
of the policy for underinsured motorists coverage or auto medical
payments coverage, this Court must first resolve whether the
claimant's vehicle is a "covered 'auto.'" To resolve this issue,
several interrelated forms and endorsements must be consulted and
cross-referenced. The first is the "Business Auto Declarations."
Page one of this form/endorsement indicates that the "Named
Insured" for the policy is the Mud River Volunteer Fire Department,
a "form of business" which is designated as "other," as opposed to
"individual," "corporation," "partnership," or "limited liability
company."

Page two of the "Business Auto Declarations" form/endorsement
indicates the different types of coverages issued to the MRVFD and
the "autos" to which any particular coverage under the policy
applies. This page, entitled "Item Two[:] Schedule of Coverages
and Covered Autos," contains a chart which is divided into four
columns, with each column containing its own heading. Column one
is entitled "Coverages;" column two, "Covered Autos (Entry of one
or more of the symbols from the Covered Autos Section of the

Business Auto Coverage Form shows which autos are covered autos);"
column three, "Limit [—] The Most We Will Pay for Any One Accident
or Loss;" and column four, "Premium."

Above the chart is the following introductory paragraph:

> This policy provides only those coverages where a
> charge is shown in the premium column below. Each of
> these coverages will apply only to those 'autos' shown as
> covered "autos". "Autos" are shown as covered 'autos'
> for a particular coverage by the entry of one or more of
> the symbols from the Covered Autos Section of the
> Business Auto Coverage Form next to the name of the
> coverage.

Within the chart, the "Coverages" column and two subheadings
thereunder merit close attention: "Underinsured Motorists," and
"Auto Medical Payments." For the "Underinsured Motorists"
coverage, the "Limits" column indicates a maximum payout of $1
million for any one loss or accident under each of the coverages.
The maximum payout for "Auto Medical Payments," as listed in the
"Limits" column, is $5,000.00 for any one loss or accident.[3] Under
the "Premiums" column is the designation "Incl." -- rather than a
dollar figure -- for the underinsured motorists coverages. The
"Premiums" section is blank for auto medical payments coverage.[4]

Of particular importance are the numerical designations
relating to underinsured motorists and auto medical payments

---

[3]The limits of coverage are not in dispute.

[4]As Arch does not contest the eligibility of MRVFD, as the
Named Insured, for this coverage, this omission is immaterial to
the issue of ambiguity as it pertains to the plaintiffs in this
action.

coverages under the "Covered Autos" column.[5]  The number "6" is assigned to underinsured motorists coverages, and the number "7" is assigned to the auto medical payments coverage.  As the parenthetical information in the column two heading indicates, supra, the numerical symbols in that column are cross-referenced to "the Covered Autos Section of the Business Auto Coverage Form[,]" which is the form showing "which autos are covered autos."  The "Business Auto Coverage Form" begins with the following explanation:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
> Throughout this policy the words "you" and "your" refer to the Named Insured in the Declarations.  The words "we", "us", and "our" refer to the Company providing this insurance.
> Other words and phrases that appear in quotation marks have special meaning.  Refer to Section V –Definitions.
> Section I-Covered Autos
> Item Two of the [Business Auto] Declarations shows the "autos" that are covered "autos" for each of your coverages.  The following numerical symbols describe the "autos" that may be covered "autos".  The symbols entered next to a coverage on the [Business Auto] Declarations designate the only "autos" that are covered "autos".

Underneath this explanatory section is subsection A, "Description of Covered Auto Designation Symbols," followed by a chart with two columns.  The left hand column is entitled "Symbols," and the right

---

[5]From time to time, the parties refer to "uninsured motorists coverage," as well as "underinsured motorists coverage."  For purposes of this opinion, this Court's analysis would be the same for either type of policy.

hand column, like subsection A, is entitled "Description of Covered Auto Designation Symbols." The numerical symbol "6" in the left column corresponds to "Owned 'Autos' Subject to a Compulsory Uninsured Motorists Law," described further in the right hand column as

> Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

The policy thus provides underinsured motorists coverage to certain "autos" that are subject to state uninsured motorists laws. The "Business Auto Coverage Form" specifies that the word "you" as used in the policy means "Named Insured." Because MRVFD is the only "Named Insured," then under the terms of the basic policy, only "autos" owned by the MRVFD and subject to West Virginia underinsured motorists laws are "covered 'autos.'" The MRVFD did not own the vehicle that Kevin Ferrell was driving when he stopped to render emergency aid and therefore he is not an "insured" for underinsured motorists coverage under the basic policy. A separate underinsured motorists endorsement, which modifies the basic policy, discussed _infra_, does not change the coverage for Kevin Ferrell's personal vehicle.

The numerical symbol "7" in the left column of subsection A, "Description of Covered Auto Designation Symbols," designates which

autos are covered for auto medical payments and corresponds to "Specifically Described 'Autos,'" described further in the right hand column as "Only those 'autos' described in Item Three of the [Business Auto] Declarations for which a premium charge is shown (and for Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)". Item Three of Business Auto Declarations, Form/Endorsement No. CA 190 (1-87), lists seven specific covered autos, none of which is the vehicle that Kevin Ferrell was driving when he stopped to give emergency assistance at the scene of the accident. Because the policy does not specifically designate Kevin Ferrell's vehicle in Item Three of the Business Autos Declarations, then under the terms of the basic policy, Kevin Ferrell is not an "insured" for purposes of auto medical payments coverage. A separate auto medical payments endorsement, which modifies the basic policy, discussed infra, does not change the coverage for Kevin Ferrell's personal vehicle.

2. <u>Auto Medical Payments and Underinsured Motorists Endorsements</u>

The remaining two forms/endorsements relevant to this discussion, and taken in the order in which they appear in the policy, are the "West Virginia Auto Medical Payments Coverage" (Form/Endorsement No. A99 68 08 98) and the "West Virginia Uninsured and Underinsured Motorists Coverage" (Form/Endorsement CA 21 22 04 01), both of which advise: "This endorsement changes the

policy. Please read it carefully." Both forms also provide that the endorsement modifies insurance provided under the "Business Auto Coverage Form," as well as other coverage forms not related to this action.

### a.  Auto Medical Payments Coverage

Section A of the "West Virginia Auto Medical Payments Coverage" endorsement, entitled "Coverage," states, in pertinent part, that the insurance company "will pay reasonable expenses incurred for necessary medical and funeral services to or for an 'insured' who sustains 'bodily injury' caused by 'accident.'"

Section B of the "West Virginia Auto Medical Payments Coverage" endorsement identifies who qualifies as an "insured" for auto medical payments coverage:

> B.  Who Is An Insured
> 1.  You while "occupying" and "auto".
> 2.  If you are an individual, any "family member" while "occupying" any "auto".
> 3.  You or any "family member" while a pedestrian when struck by any "auto".  This includes an "auto" which causes "bodily injury" without hitting an "insured", provided facts of the "accident" can be proven by sufficient independent corroborative evidence, other than the testimony of the "insured" making a claim under this or similar coverage.
> 4.  Anyone else "occupying a covered "auto" or a temporary substitute for a covered "auto".  The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

Because "you" refers only to MRVFD, as the Named Insured, subsection 4 is the only provision that potentially applies to Kevin Ferrell.  Kevin Ferrell falls under the term "anyone else,"

14

which is not assigned a particular definition in the policy and which this Court therefore takes to have its ordinary meaning. To qualify as an "insured" under this provision, however, Kevin Ferrell must have been "'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" Page two of the "West Virginia Auto Medical Payments Coverage" endorsement defines "occupying" as "in, upon, getting in, on, out or off." Kevin Ferrell was not "in, upon, getting in, on, out or off" his vehicle at the time of the accident and therefore was not "occupying" his vehicle. The plaintiffs argue that under West Virginia case law, "occupying" is not interpreted so narrowly. This Court need not consider this argument because, as discussed above, Kevin Ferrell's vehicle is not a "covered 'auto'" under the provisions of the policy.

b.  <u>Underinsured Motorists Coverage</u>

Similarly, the underinsured motorists endorsement contains a subsection identifying who is "an insured" under the policy for purposes of underinsured motorists coverages. Subsection A(1) provides, in relevant part, that the insurance company "will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured' or 'underinsured motor vehicle'". The damages must result from 'bodily injury' sustained by the 'insured', or 'property damage' caused by an 'accident'. Subsection B describes who qualifies as an "insured" for purposes of underinsured motorists coverage:

15

> If the Named Insured is designated in the [Business Auto] Declarations as:
> 1.   An individual, then the following are "insureds"
> . . .
> 2.   A   partnership,   limited   liability   company, corporation or any other form of organization, then the following are "insureds":
> a.   Anyone "occupying" or using a covered "auto" or a temporary substitute for a covered "auto".  The covered "auto must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
> b.   Anyone for damages he or she is entitled to recover because   of   "bodily   injury"   sustained   by   another "insured".

Again, because Kevin Ferrell's vehicle was not a "covered 'auto'" under the clear terms of the policy, Kevin Ferrell does not qualify as an "insured" for purposes of underinsured motorists coverage.

Viewing   the   facts   in   the   light   most   favorable   to   the plaintiffs on defendant's motion for summary judgment, this Court finds that the clear and unambiguous terms of the insurance policy issued by Arch Insurance Company to the Mud River Volunteer Fire Department   do   not   provide   auto   medical   payments   coverage   or underinsured motorists payments coverage to Kevin Ferrell for the injuries he sustained on January 6, 2004 because his vehicle is not a   "covered   'auto'"   under   the   provisions   of   the   policy   and, therefore, he does not qualify as an "insured."   The plaintiffs have   failed   to   make   a   sufficient   showing   that   Kevin   Ferrell's vehicle   was   a   "covered   'auto'"   and   thus   an   insured   entitled   to underinsured motorists benefits or auto medical payments benefits under the terms of the MRVFD's insurance policy with Arch.

B.   <u>The Creation of Reasonable Expectation by Arch's Agent</u>

The plaintiffs argue that even if the terms of the policy are clear, Arch's agent, John Wayne Hughes, created a reasonable expectation of auto medical payments and underinsured motorists coverages for MRVFD's individual firemen who used their own vehicles to provide emergency services to the public.[6]  In support of this contention, the plaintiffs point to the deposition transcripts of plaintiff Melissa Ferrell and of Arch's agent, John Wayne Hughes.

1.   <u>Melissa Ferrell's Deposition</u>

According to Melissa Ferrell's deposition, Hughes made two presentations to the MRVFD before the MRVFD purchased the insurance policy from Arch.  The first was made to MRVFD Chief John Lovejoy and Melissa Ferrell in her capacity as Secretary/Treasurer of the MRVFD, and the second to the MRVFD Board of Directors ("the Board") at a public meeting attended by members of the MRVFD and others from the local community.  In the sections of the deposition relied upon by the plaintiffs,[7] Melissa Ferrell stated that the Board elected to purchase insurance from Arch because it offered broader

---

[6]The plaintiffs advance this argument in both in their response to defendant's motion for summary judgment and in their own motion for summary judgment.

[7]In support of their memorandum in opposition to defendant's motion for summary judgment and of the memorandum in support of the plaintiffs' own motion for summary judgment, the plaintiffs submitted Melissa Ferrell's deposition transcript from pages 1-4; 37-40; and 45-48.

and less expensive coverage than the policy the MRVFD had at the time. (M. Ferrell Dep. 45.) Specifically, Melissa Ferrell stated that what she recalled about the first meeting was that Arch's policy would pay to repair or replace the firemen's personal vehicles "if they were on their way to a scene and they had an accident." (M. Ferrell Dep. 40.) The sections of Melissa Ferrell's deposition supplied by the plaintiffs do not mention the content of the second meeting. The transcript sections of Melissa Ferrell's deposition provided by the plaintiffs to support their claim of reasonable expectations neither assert nor imply that Hughes made any representations about auto medical payments coverage or underinsured motorists coverage that could have created a reasonable expectation by the plaintiffs that Arch's policy covered bodily injuries to the MRVFD firemen when they used their own vehicles to provide emergency services to the public.

    2.    <u>John Wayne Hughes' Deposition</u>

    According to the sections of Hughes' transcript relied upon by the plaintiffs, when Hughes makes his presentations, he typically discusses liability coverage, which covers bodily injuries to others if the fireman is at fault, regardless of whether the fireman is using his own vehicle or a vehicle owned by the fire department. (Hughes Dep. 29-30; 37-38; 45-48.) Hughes testified that when he discusses coverage for incidents arising when volunteer firemen use their own vehicles, his practice is to do so

"in a very standard way because it could easily get confused."
(Hughes Dep. 37.)  According to Hughes, he explains that, if at any
time, the firemen are

> doing something for their fire department, their personal
> vehicle is covered in this way[:]  A) If they have an
> accident, and the accident is their fault, we pay the guy
> they hit . . . .  B) [I]f their vehicle is damaged and
> they have collision insurance on their vehicle, we pay
> their deductible.  So they're out of pocket nothing.  [C]
> If they have no collision on their vehicle, and they only
> carry liability on it, as the state law requires, then we
> will pay to have their vehicle repaired, or if it's
> totaled, the actual cash value of their vehicle.

(Hughes Dep. 38.)

Hughes also testified that his interpretation of underinsured
motorists coverage is that it "is coverage provided for the listed
vehicles."  (Hughes Dep. 31.)  Similarly, in his deposition,
Hughes stated that auto medical payments coverage is provided on
covered vehicles "that are listed on page 12, that we provide."
(Hughes Dep. 39.)

Nothing in the sections of Hughes' deposition transcript
provided by the plaintiffs in opposition to the defendant's motion
for summary judgment, or in support of their own motion for summary
judgment, supports their contention that Hughes made
representations to the MRVFD or to either of the plaintiffs that
could have created reasonable expectations that MRVFD's individual
firemen who used their own vehicles to provide emergency services
to the public were covered by underinsured motorists coverage or
auto medical payments coverage.  The plaintiffs have failed to make

19

a sufficient showing that Hughes, or any other Arch agent, made any representation that could have lead to a reasonable expectation of underinsured motorists coverage or auto medical payments coverage for the bodily injuries that Kevin Ferrell sustained while using his own vehicle.

## V. Conclusion

For the reasons stated above, Kevin and Melissa Ferrell's Motion for Leave to File a Late Response to Defendant's Motion for Summary Judgment is hereby GRANTED; Arch Insurance Company's motion for summary judgment is hereby GRANTED; and Kevin and Melissa Ferrell's motion for summary judgment is hereby DENIED. It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:     September 28, 2007


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE